**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

THEAPULIUS D. PORTER,       :
                                 :
            Plaintiff,        :
v.                             :      CASE NO. 1:14-CV-33-WLS-MSH
                                 :
KEVIN SPROUL, *et al.*,       :
                                 :
            Defendants.     :
_____:

**ORDER AND**
**REPORT AND RECOMMENDATION**

Presently pending before the Court are Defendants' motion for summary judgment (ECF No. 19) and two motions to strike (ECF Nos. 26, 27), as well as Plaintiff's "Motion to Relate" (ECF No. 23) and motion to strike (ECF No. 24). For the reasons detailed herein, Plaintiff's motions are denied, Defendants' motions to strike are denied, but it is recommended that Defendants' motion for summary judgment be granted.

**BACKGROUND**

Plaintiff is a pretrial detainee claiming various constitutional violations at Dougherty County Jail (DCJ). After a preliminary review of the Complaint, Plaintiff was allowed to proceed on two separate claims for violation of his due process rights, and a claim of unconstitutional conditions of confinement. Plaintiff generally complains that he was not provided due process before his placement on suicide watch when he entered DCJ in March 2013, subjecting him to a lack of mattress or foot protection for ninety (90) days. Further, Plaintiff complains that he was not provided due process during two

disciplinary hearings, one on June 19, 2013, and the other on September 27, 2013.[1] Plaintiff was found guilty of multiple disciplinary infractions at each hearing and was placed in segregation per DCJ policy.  He also complains about the conditions of confinement while in segregation including lack of shower shoes – causing pain in his feet and knees; lack of adequate running water – causing him to feel dehydrated, light-headed, and dizzy; lack of recreation time – causing back pain, muscle spasms, and stiff joints; and lack of adequate lighting at night – causing Plaintiff to urinate on the floor and toilet and preventing him from reading.

Following an initial review pursuant to 28 U.S.C. § 1915, these claims were allowed to proceed against Colonel John Ostrander, Lieutenant Chuck Faulk, Lieutenant Cathy Parks, Captain A. Brock, and Sergeant M. Farley in their individual and official capacities.  Defendants move for summary judgment claiming that Plaintiff failed to exhaust his administrative remedies for one of his claims, that Defendants are entitled to Eleventh Amendment and qualified immunity, and that there is no genuine issue of material fact as to Plaintiff's other claims such that Defendants are entitled to judgment as a matter of law.  Plaintiff responds that Defendants are not entitled to summary judgment.  Also currently pending are Defendants' two motions to strike, as well as Plaintiff's "Motion to Relate" and motion to strike.  These motions are ripe for review.

---

[1]     Plaintiff's own filings were unclear as to the dates of these hearings.  Defendants' motion for summary judgment and affidavits attached thereto supplied the dates that the Court uses herein.

## DISCUSSION

### I.     Plaintiff's motion to "relate" and motion to strike

Subsequent to the filing of Defendants' motion for summary judgment, Plaintiff filed a document titled "Motion to Relate," (ECF No. 23) in which he requests that this case and another case filed against many of the same Defendants by Manasseh Roydrego Skinner (*Skinner v. Sproul*, 1:13-cv-166-WLS, Oct. 16, 2013) be consolidated into one case.  Plaintiff states that both cases involve similar complaints against many of the same defendants and therefore they should be combined.   Defendants filed a response in opposition to the motion in which they argue that although both Plaintiffs complain of the conditions of confinement in disciplinary detention at DCJ, differences in the parties to the lawsuits and non-overlapping issues weigh against consolidation.   Defs.' Resp. to Mot. to Relate 2-3, ECF No. 29.   Since the filing of Plaintiff's motion, however, Judgment has been entered in favor of the defendants in case number 1:13-cv-166, and that case has been closed.  *See Skinner*, 1:13-cv-166-WLS, Judgment, Mar. 31, 2015, ECF No. 64.  Therefore, Plaintiff's motion is denied as moot.

Plaintiff also moves to strike Defendants' affidavits claiming that they are not based on personal knowledge and lack supporting facts.   (ECF No. 24.)   The Court cannot consider such statements in support of a motion for summary judgment.  *See Roswell v. BellSouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005) ("On motions for summary judgment, we may consider only that evidence which can be reduced to an admissible form.").   However, the Court has sifted through these documents and determined which portions are factual statements that may be used in support of the

motion for summary judgment and the Court denies Plaintiff's motion.  To the extent that any of Defendants' affidavits contain conclusory statements or are otherwise not admissible, the Court will not consider such statements to support the motion for summary judgment.

## II.  Defendants' motions to strike Plaintiff's affidavit and pending motions

Defendants move to strike multiple filings by Plaintiff subsequent to the filing of their motion for summary judgment.  The overarching basis for their motion is the fact that Plaintiff's one-time cellmate Manasseh Roydrego Skinner (a prolific filer in this Court on his own behalf) appears to have drafted, and possibly filed for Plaintiff, these motions and pleadings.  Defs.' Br. in Supp. of First Mot. to Strike 1-3, ECF No. 26-1. Defendants argue that Skinner is conducting the unauthorized practice of law on Plaintiff's behalf and that his filings should consequently be struck from the record.  *Id.* Defendants also argue that the Court should strike the affidavit/declaration of Skinner filed along with Plaintiff's response to the motion for summary judgment because it is "rife with conclusory allegations, speculation, and legal conclusions."  Defs.' Br. in Supp. of Second Mot. to Strike 1-2, ECF No. 27-1.

As the Court stated above, Plaintiff's pending motions are without merit. Therefore, Defendants' First Motion to Strike (ECF No. 26) is denied as moot.  The Court agrees that much of Skinner's affidavit is conclusory or states a legal conclusion. For example, Skinner repeatedly makes legal conclusions such as: "I was deprived [] of my rights to due process" in disciplinary hearing by DCJ officials.  Decl. of Manasseh

Roydrego Skinner 1, Jan. 10, 2015, ECF No. 25-1.  However, for the same reasons explained above, the Court denies Defendants' Second Motion to Strike (ECF No. 27).

## III.   Defendants' motion for summary judgment

Defendants move for summary judgment claiming that Plaintiff failed to exhaust his administrative remedies for one of his claims, that Defendants are entitled to Eleventh Amendment and qualified immunity, and that there is no genuine issue of material fact as to Plaintiff's other claims such that Defendants are entitled to judgment as a matter of law.  The Court addresses each of Defendants' arguments in turn.

### A.   Standard of Review[2]

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.  *Id.*

---

[2] This standard of review applies to all sections except for the arguments concerning failure to exhaust.  As explained *infra*, failure to exhaust is properly treated as a motion to dismiss.  *Bryant v. Rich*, 530 F.3d 1368, 1375 (11th Cir. 2008).

5

B.      Defendant Faulk

Defendants argue that Lieutenant Faulk should be dismissed from this case because although Plaintiff names him in the heading of his Recast Complaint, Plaintiff makes no specific allegations against him.[3]  It appears that Lt. Faulk should have been included in the list of supervisory officials who were dismissed from the case following the Court's initial review of the compliant.  For the reasons detailed in section III.A. of the Court's Order and Recommendation dated May 9, 2014 (ECF No. 11), adopted as the Order of the Court on November 4, 2014 (ECF No. 18), Defendant Faulk should be dismissed from the case.

C.      Failure to Exhaust

Title 42, United States Code section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  "[W]hen a state provides a grievance procedure for its prisoners, as Georgia does here, an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." *Johnson v. Meadows*, 418 F.3d 1152, 1156 (11th Cir. 2005) (internal quotation marks and citation omitted).  The argument that a plaintiff has failed to satisfy section 1997e(a) is properly raised in a motion to dismiss. *Bryant*, 530 F.3d at 1375 ("[E]xhaustion should be decided on a Rule 12(b) motion to dismiss[.]").

---

[3]     Defendants also include Sgt. Farley in their argument, but because Plaintiff alleges that Sgt. Farley was one of the officers involved in his disciplinary hearings, he cannot be dismissed under the same rationale.

Furthermore, since dismissal for failure to exhaust is not an adjudication on the merits, the Court can resolve factual disputes using evidence from outside the pleadings. *Id.* at 1376.

"[D]eciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's versions of the facts as true." *Id.* If, taking plaintiff's facts as being true, the defendant is entitled to dismissal for failure to exhaust, then the complaint should be dismissed. *Id.* "If the complaint is not subject to dismissal at the first step . . . , the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* The defendant bears the burden of proof during this second step. *Id.*

Defendants contend that Plaintiff failed to exhaust the claims related to his placement on suicide watch when he first entered DCJ. Defs.' Br. in Supp. of Mot. for Summ. J 13, ECF No. 19-2. Defendants show that DCJ has a grievance procedure that is outlined in the Inmate Handbook, which Plaintiff received upon his intake on March 31, 2013. Exs. B & C to Montgerard Aff., ECF No. 19-8. The grievance procedure is a two-step procedure. The inmate must file a grievance and appeal to exhaust his administrative remedies. *Id.* Defendants state that Plaintiff never filed a grievance while he was in administrative segregation on suicide watch, and although he did file a grievance regarding his suicide bedding, after he was removed from suicide watch, he failed to appeal the denial of that grievance. Defs.' Br. in Supp. of Mot. for Summ. J. 14.

7

Defendants support this contention with a copy of grievance number 20045, filed on August 28, 2013.  Ex. J to Montgerard Aff.

Plaintiff's response points to other grievances filed and simply concludes that Plaintiff has exhausted his available remedies.  Pl.'s Mem. of Law in Opp'n to Defs.' Mot. for Summ. J. 8, ECF No. 25-2.  None of the cited grievances, however, deal with the suicide bedding complaints.  Therefore, even taking Plaintiff's version of the facts as true, Plaintiff did not exhaust his claims with regard to suicide bedding.  *See Turner*, 541 F.3d at 1082.  As to Plaintiff's claim of violation of his due process rights in being placed on suicide watch and the conditions imposed in connection therewith, the Court finds that Plaintiff has failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a) and recommends that this claim be dismissed.

C.     Official Capacity Claims

Defendants next claim that they are entitled to summary judgment on the claims against them in their official capacities.  Specifically, Defendants argue that Eleventh Amendment immunity protects them from suit in this case.  "The Eleventh Amendment protects a State from being sued in federal court without the State's consent." *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003).  "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citations omitted). "As such, it is no different from a suit against the State itself," *Id.*, which fails because of Eleventh Amendment immunity.  *See, e.g., Williams v. Bd. of Regents of Univ. Sys. of*

*Ga.*, 477 F.3d 1282, 1301 (11th Cir. 2007) ("Under most circumstances, the Eleventh Amendment bars suits against states and state entities by their citizens.").

Defendants here include employees of the Sheriff of Dougherty County. "[A]uthority and duty [of the sheriff] to administer the jail in his jurisdiction flows from the State, not the County." *Purcell ex rel Estate of Morgan, v. Toombs Cnty., Ga.*, 400 F.3d 1313, 1325 (11th Cir. 2005) (internal quotation marks and citation omitted); *see also Manders v. Lee*, 338 F.3d 1304, 1308-12, 1315-18, 1328-29 (11th Cir. 2003). The same rationale that applies to the sheriff applies to sheriff's deputies and officers operating in their official capacities in running and administering the jail. *Scruggs v. Lee*, 256 F. App'x 229, 232 (11th Cir. 2007). Therefore, Eleventh Amendment immunity bars suits for damages against Defendants in their official capacities and summary judgment should be granted in their favor.

Plaintiff responds that the Eleventh Amendment does not bar a request for injunctive relief. Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J. 20-21. "In *Ex parte Young*, [209 U.S. 123 (1908),] the Supreme Court carved out a narrow exception to the States' sovereign immunity when it held that the Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law." *Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga.*, 633 F.3d 1297, 1308 (11th Cir. 2011) (internal quotation mark and citation omitted). This exception does not apply "to claims for retrospective relief." *Green v. Mansour*, 474 U.S. 64, 68 (1985).

In his Recast Complaint, Plaintiff does not clearly request any form of injunctive relief. Although he did state that he was requesting "injunctive and declaratory reliefs" in his original Complaint, he did not explain what specific relief was sought. Compl. 17. Defendants state that although Plaintiff was released from DCJ on some date prior to June 27, 2014, he returned to the jail prior to December 8, 2014. Defs.' Reply to Pl.'s Resp. to Mot for Summ. J. 3, ECF No. 28; *see also* Notice of Change of Address, June 27, 2014; Letter from Plaintiff requesting copies, Dec. 8, 2014, ECF No. 21. Plaintiff is therefore requesting the type of prospective injunctive relief to which the narrow *Ex parte Young* exception may apply. However, as is explained in more detail below, it is recommended that Defendants' motion for summary judgment be granted because no constitutional violation has occurred. There is thus no continuing violation of federal law for which Plaintiff would be entitled to an injunction, and the *Ex parte Young* exception does not apply. Defendants' motion for summary judgment for the claims in their official capacities should be granted.

E.    Individual Capacity Claims

Defendants also argue that they are entitled to qualified immunity on Plaintiff's claims. "Qualified immunity protects government officials performing discretionary duties from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Anderson v. City of Naples*, 501 F. App'x 910, 915-16 (11th Cir. 2012) (internal quotation marks and citation omitted). "The purpose of qualified immunity is to allow officials to carry out discretionary duties without the chilling fear of personal liability or

10

harrassive litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating federal law." *McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir. 2009) (internal quotation marks and citation omitted).

"In order to receive qualified immunity, an official must first establish that he was acting within the scope of his discretionary authority when the alleged wrongful acts occurred." *Id.* Once the defendant shows that he was acting within his discretionary authority, the burden then shifts to the plaintiff to establish that qualified immunity does not apply. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2004). Defendants contend, and Plaintiff does not contest, that they were acting within their discretionary authority in the administration of the Dougherty County Jail. The Court agrees. *See, e.g., Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994) ("We thus interpreted the term 'discretionary authority' to include all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." (internal quotation marks and citation omitted)). Because that determination is made, the burden shifts to Plaintiff to show that Defendants are not entitled to qualified immunity.

"To overcome an official's claim of qualified immunity, the plaintiff must show that: (1) the official violated a constitutional right; and (2) that right was clearly established at the time of the alleged violation." *Anderson*, 501 F. App'x at 916 (citation omitted).[4] Plaintiff here alleges that the following constitutional violations have occurred: (1) procedural due process violations committed by Captain Brock, Sergeant

---

[4] Courts should use their discretion in determining which prong of the qualified immunity inquiry to address first. *McCullough*, 559 F.3d at 1205.

Farley, Lieutenant Parks, and Colonel Ostrander at the June 19, 2013 and September 27, 2013 disciplinary hearings; and (2) unconstitutional conditions of confinement by unspecified officials in violation of the Fourteenth Amendment.  The Court therefore must determine whether the Plaintiff has shown that Defendants' conduct violated a constitutional right and whether that right is clearly established.

"To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right."  *Reichle v. Howards*, -- U.S. --, 132 S. Ct. 2088, 2093 (2012) (internal quotation marks and citation omitted) (alteration in original).  "In other words, existing precedent must have placed the statutory or constitutional question beyond debate."  *Id.* (internal quotation marks and citation omitted).  The Eleventh Circuit has explained that

> [a] right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.

*Maddox v. Stephens*, 727 F.3d 1109, 1121 (11th Cir. 2013).  Furthermore, "[t]he inquiry whether a federal right is clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition."  *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012) (internal quotation marks and citation omitted).  "The relevant, dispositive inquiry in determining whether a right is *clearly* established is whether it would be *clear* to a reasonable [state official] that his conduct was unlawful in the situation he confronted."  *Id.* (quotation marks and citation omitted) (emphasis and

alteration in original).  The court should look "only to binding precedent—cases from the United States Supreme Court, the Eleventh Circuit, and the highest court of the state under which the claim arose—to determine whether the right in question was clearly established at the time of the violation."  *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (citation omitted).

### 1.    *Procedural Due Process*

Plaintiff contends that his due process rights were violated during two different disciplinary hearings.  He states that on June 19, 2013, he appeared before Capt. Brock, Sgt. Farley, and Lt. Parks for a hearing on a disciplinary report.  He also states that he appeared before the same officials and Col. Ostrander on September 28, 2013.[5]  He argues that he was deprived of his liberty and a fair hearing as he was "not allowed to receive assistan[ce] to prepare [his] defense . . . [or] be able to present [his] witnesses in [his] defense . . . [or] confront [his] accusers . . . and be notified prior to [the] (D.R.) [Disciplinary Report] hearing."  Recast Compl. 2.  Plaintiff contends that he was convicted "of improper complaints with several errors including the wrong dates" listed. *Id.*  He states that he did not receive a response to his appeal from Col. Ostrander after he was found guilty of the allegations, and that he suffered two sixty-day periods in disciplinary segregation due to these violations.  *Id.* at 3.

A prisoner may claim a violation of a protected liberty interest arising out of his confinement in punitive segregation, such that due process is required, if the placement

---

[5]    Defendants have specified that the second disciplinary hearing was actually held on September 27, 2013.

(1) "will inevitably affect the duration of his sentence;" or (2) "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  "When a prisoner's due process rights are triggered, he is entitled to, among other things, an opportunity to call witnesses and present documentary evidence at a disciplinary hearing."  *Allen v. Sec'y Fla. Dep't of Corr.*, 578 F. App'x 836, 839 (11th Cir. 2014) (citation omitted).  Generally, however, prisoners have "no constitutionally protected liberty interest in being classified at a certain security level or housed in a certain prison."  *Kramer v. Donald*, 286 F. App'x 674, 676 (11th Cir. 2008); *see also Meachum v. Fano,* 427 U.S. 215, 223-24 (1976) (finding the transfer of a prisoner to less agreeable prison does not implicate a liberty interest).

Plaintiff does not and could not contend that his placement in disciplinary detention affects the duration of his sentence because he is a pretrial detainee.  Thus, in order to show that he has a liberty interest such that his due process rights have been triggered, Plaintiff must establish that his stay in disciplinary detention "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.  Plaintiff "must show that his conditions of confinement were atypical and significant when compared to other administrative detainees."  *Magluta v. Samples*, No. 1:94-cv-2700, 2006 WL 1071844, at *7 (N.D. Ga. Apr. 20, 2006) (discussing requirements for pretrial detainee to establish a liberty interest), *aff'd* 238 F. App'x 458 (11th Cir. 2007).

14

Plaintiff claims that the allegedly unconstitutional conditions in disciplinary detention included: a lack of shower shoes – causing pain in his feet and knees; lack of adequate running water – causing him to feel dehydrated, light-headed, and dizzy; lack of recreation time – causing back pain, muscle spasms, and stiff joints; and lack of adequate lighting at night – causing Plaintiff to urinate on the floor and toilet and preventing him from reading.   Recast Compl. 3-4.   These conditions, Plaintiff contends, impose an atypical and significant hardship on him.   Plaintiff does not compare these conditions to the conditions in administrative segregation but nonetheless contends that they are somehow worse.

Defendants respond by presenting evidence of the conditions in both administrative segregation and disciplinary detention.   At Dougherty County Jail, inmates in administrative segregation are provided one hour and fifteen minutes of time out of cell every other day.   Ostrander Aff. ¶ 7, Nov. 13, 2014, ECF No. 19-9.   During this time out of cell, the inmates can take a shower, make phone calls, stay in their cells, visit a "multi-purpose" room, or clean their cells.   *Id*. ¶ 8.   Similarly, inmates in disciplinary detention are allowed out of their cell for one hour every other day.   *Id*. ¶ 13.   This privilege can be forfeited through misconduct, but inmates are provided fifteen minutes of water time at night to take care of their hygiene needs.   *Id*. ¶ 15.   During the time they are allowed out of their cells, disciplinary detention inmates are allowed to shower, sit in their cells, or clean their cells under supervision of an officer.   *Id.* ¶ 14.

Administrative segregation inmates are allowed access to reading materials (unless they are on suicide watch), television, visitation, commissary, phones, and outdoor

15

recreation.  Ostrander Aff. ¶ 9.  Disciplinary detention inmates lose outside recreation, phone, television, and visitation privileges.  *Id*. ¶ 16.  However, disciplinary inmates are allowed two books in their cells.  *Id*. ¶ 17.  In both administrative segregation and disciplinary detention, inmates have control of the lights in their cell during the day.  *Id*. ¶¶ 10, 22.  From midnight until 5:30 a.m., however, the lights are switched off.  *Id*. Inmates have call buttons in their cells which allows a guard to turn on the light if the inmate needs to use the toilet while the lights are out.  *Id*. ¶ 23.

Concerning the specific conditions in the disciplinary detention area, the Defendants have shown as follows.  The windows in disciplinary detention used to be blacked out because they overlooked female portions of the jail.  *Id*. ¶¶ 18-19.  The windows are now opaque plexiglass which allows in light, but blocks the view.  *Id.* ¶ 21. Inmates in disciplinary detention are not allowed to wear their shower shoes while in their cells, but they are permitted to wear socks.  *Id.* ¶ 25.  This stops inmates from using their shoes to beat on the cell door causing a disturbance.  *Id.*  They are allowed to wear their shower shoes when they leave the cell.  *Id*. ¶ 26.  Disciplinary detention inmates also have a history of flooding their cells.  *Id*. ¶ 24.  Consequently, the water in those cells is turned on for only fifteen minutes every hour from 5:30 a.m. until midnight.  *Id.*

Plaintiff submitted a copy of the Disciplinary Detention Inmate Rules as an exhibit to his response to the motion for summary judgment.  These rules confirm the conditions as outlined above.  Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J. Ex., ECF No. 25-7. Plaintiff also submitted as exhibits several different excerpts from the Dougherty County Sheriff's Office Standard Operating Policy and Procedure.  The portion on disciplinary

detention as a result of a disciplinary hearing, chapter 9.23, also confirms the conditions outlined above. *Id.*, ECF No. 25-4.

This evidence shows that the general conditions of the disciplinary detention area are the same as the administrative segregation area. Disciplinary detention inmates lose outside recreation, phone, television, and visitation privileges. Also, they are not allowed shower shoes in their cells and the water is turned on for fifteen minute intervals per hour during the day. The temporary denial—sixty days at a time on two separate occasions—of these few privileges does not impose an atypical and significant hardship on Plaintiff such that a liberty interest has been created. *See, e.g., Charriez v. Sec'y, Fla. Dep't of Corr.*, -- F. App'x --, 2015 WL 127367, at *3 (11th Cir. Jan. 9, 2015) (explaining that "[t]he Supreme Court has held that an inmate does not have a liberty interest in or right to unfettered visitation and thus a denial of visitation is not protected by the Due Process Clause."); *McGruder v. Phelps*, 608 F.2d 1023, 1025 (5th Cir. 1979) (removal of movie privileges does not violate Eight Amendment);[6] *Fricks v. Upton*, No. 5:10–CV–458 (MTT), 2011 WL 3156680 at * 3 (M.D. Ga. April 14, 2011) (allegations that plaintiff was only allowed to shower three times a week, was handcuffed every time he was moved within the prison, was denied library call and educational opportunities, and was forced to wear his hair "bald" were not "sufficiently serious" to constitute cruel and unusual punishment); *Garcia v. Cameron*, No. 2:10–cv–487–FtM–29DNF, 2010 WL 5477765 at *3 (M.D. Fla. Dec. 30, 2010) (allegations that prisoner was afforded only 30

---

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

minutes of outside physical exercise, three times a week, 15 minute showers three times a week, and 15 minute shaves and/or haircuts three times a week were not "the type of deprivation of life's necessities to rise to an Eighth Amendment violation"); *Georges v. Ricci*, Civ. No. 07–5576, 2007 WL 4292378, at *7 (D.N.J. Dec. 4, 2007) (visitation and telephone contacts with family members were not a minimal life's necessity).[7]  Plaintiff has thus failed to show that he has a liberty interest in being kept out of disciplinary detention such that his procedural due process rights are triggered.  Because Plaintiff has not established a constitutional violation, Defendants' motion for summary judgment should consequently be granted as to Plaintiff's claims that Defendants violated his due process rights.[8]

## 2.    *Conditions of Confinement*

Plaintiff also argues that the conditions described above violate the Eighth Amendment's prohibition on cruel and unusual punishment.  Since Plaintiff is a pretrial detainee, his claim actually arises under the Fourteenth Amendment Due Process Clause. *Gilmore v. Hodges*, 738 F.3d 266, 271 (11th Cir. 2013).  The standard for Plaintiff's alleged constitutional violation is identical under either amendment.  *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1574 (11th Cir. 1985).

---

[7] Although many of these cases were decided in the context of an Eighth Amendment conditions of confinement claim, they are persuasive as to the type of condition that could create an atypical and significant hardship.

[8] The Court notes that Plaintiff is a pretrial detainee.  Plaintiff does not contend that his placement in disciplinary detention is punishment such that it violates the due process clause. Such an argument would likely fail as Plaintiff was put into disciplinary detention as a result of disciplinary hearings for violations of the jail rules and policies.  The Supreme Court has recognized that "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Bell v. Wolfish*, 441 U.S. 520, 546 (1979).

18

"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones," and a prisoner may subject the conditions under which he is confined "to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks and citations omitted). "The Supreme Court has developed a two-part analysis to govern Eighth Amendment challenges to conditions of confinement." *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004). Under the objective component, "a prisoner must prove that the condition he complains of is sufficiently serious to violate the Eighth Amendment." *Id.* The subjective component requires a showing that the "defendant prison officials acted with a sufficiently culpable state of mind with regard to the condition at issue[;]" in other words, that they were deliberately indifferent. *Id.* (internal quotation marks and citation omitted). "[D]eliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003) (internal quotation marks and citation omitted).

Plaintiff claims specifically that he was subjected to unconstitutional conditions of confinement by Col. Ostrander, Capt. Brock, and Lt. Parks. Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J. 13. He has not made any specific allegations as to these Defendants. Plaintiff avers that the jail had policies and procedures which resulted in unconstitutional conditions of confinement. *Id.*

The conditions of confinement and the policies recognizing them are discussed in detail above. As is also discussed above, these conditions are not the type of conditions

that give rise to Eighth Amendment liability. *See Farmer*, 511 U.S. at 833 ("Prison conditions may be restrictive and even harsh[.]").  In other words, they do not meet the objective component of the test for an Eighth Amendment violation. *See, e.g., Chandler*, "Generally speaking, prison conditions rise to the level of an Eighth Amendment violation only when they involve the wanton and unnecessary infliction of pain.").

Likewise, Plaintiff has failed to establish the subjective element of his Eighth Amendment claim—that the Defendants were deliberately indifferent.   Plaintiff complains that he cannot wear shower shoes in his cell, that his lights are turned off at night, that the water is on in his cell intermittently, that the windows were blocked for a period of time, and that his time out of his cell was limited to one hour every other day.  Defendants do not dispute these contentions and instead presented evidence of the policies for each of these conditions and restrictions.  Plaintiff has not provided any evidence that any of these conditions created a serious risk to his health or safety or that any of the Defendants knew that they created a risk to his health or safety and disregarded that risk. *See, e.g., Farmer*, 511 U.S. at 837 ("[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards and excessive risk to inmate health or safety[.]").

Finally, Plaintiff attempts to show that the policies created by the Sheriff's Office discussed above are unconstitutional.  The Court assumes that this has been argued in order to attach liability on the sheriff and other supervisory officials. *See West v. Tillman*, 496 F.3d 1321, 1328 (11th Cir. 2007) ("Supervisory [d]efendants are liable only

if they personally participated in the allegedly unconstitutional conduct or if there is a

causal connection between [their] actions . . . and the alleged constitutional deprivation."

(alterations in original) (internal quotation marks and citation omitted)).

> [T]o survive Defendants' motion for summary judgment, Plaintiff[] must present sufficient evidence of either (1) a custom or policy [that] result[s] in deliberate indifference to constitutional rights or . . . facts [that] support an inference that the supervisor[s] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so; or (2) a history of widespread abuse [that] put[] the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.

*Id.* at 1328-29 (alterations in original) (internal quotation marks and citation omitted).

Plaintiff has failed to produce such evidence.  There is no evidence in the record that any

policy has resulted in deliberate indifference to a constitutional right.  Furthermore, there

is no evidence in the record of widespread abuse or a failure to correct constitutional

deprivations.  Plaintiff has therefore failed to establish an Eighth Amendment conditions

of confinement claim and Defendants are entitled to qualified immunity and summary

judgment.

### 3.   *Clearly Established*

As explained previously, "[t]o overcome an official's claim of qualified immunity,

the plaintiff must show that: (1) the official violated a constitutional right; and (2) that

right was clearly established at the time of the alleged violation."  *Anderson*, 501 F.

App'x at 916 (citation omitted).  "To be clearly established, a right must be sufficiently

clear that every reasonable official would [have understood] that what he is doing

violates that right."  *Reichle v. Howards*, -- U.S. --, 132 S. Ct. 2088, 2093 (2012) (internal

quotation marks and citation omitted) (alteration in original).  "In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (internal quotation marks and citation omitted).

Plaintiff has failed to establish that Defendants violated his constitutional rights. Furthermore, even if the Court assumed that a violation of a constitutional right had been established, the case law discussed above shows that such right could not have been clearly established.  No reasonable officer would have understood that the actions taken against Plaintiff in this case violate a constitutional right.  Thus, for this additional reason, Defendants are entitled to qualified immunity.  Summary judgment should be granted for Defendants.

## CONCLUSION

For the reasons explained above, it is recommended that Defendants' motion for summary judgment (ECF No. 19) be granted.  Defendants' motions to strike (ECF Nos. 26, 27) are denied.  Plaintiff's "Motion to Relate" (ECF No. 23) and motion to strike (ECF No. 24) are denied.  Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, within fourteen (14) days after being served with a copy hereof.  The District Judge shall make a de novo determination of those portions of the Recommendation to which objection is made.  All other portions of the Recommendation may be reviewed for clear error.

The parties are hereby notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

SO ORDERED and RECOMMENDED, this 14th day of April, 2015.

/s/ Stephen Hyles
UNITED STATES MAGISTRATE JUDGE